We'll hear argument next in Case 17-988, Lamps Plus v. Varela. Mr. Pincus. Thank you, Mr. Chief Justice, and may it please the Court. This Court has repeatedly recognized that the changes brought about by the shift from bilateral arbitration to class action arbitration are fundamental. The question in this case is what standard a court should apply in determining whether an arbitration agreement authorizes class arbitration. As a threshold matter, we think it's clear that Federal law imposes a minimum standard that must be satisfied in order to permit class arbitration. The Court made that clear in Stolt-Nielsen, where it said a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so. Sotomayor But don't you make that determination under State law? I didn't think the FAA in any way undoes State law unless the basis of the State law is directed only to arbitration, which isn't the case. Pincus I don't think that's correct, Your Honor. The clear and unmistakable standard that was being discussed in the last case is a standard that the FAA imposes. Sotomayor Well, that's a standard that's basically dicta, because there the parties agree the agreement didn't. Pincus No, but in First Options, where the Court adopted that standard, the Court said that it was the FAA that imposes the clear and unmistakable requirement before an arbitration agreement may be construed to delegate gateway issues to arbitration. Sotomayor I do have one important question for me. You claim there's jurisdiction for you to appeal this case. Let's assume the plaintiff or the Petitioner, or I guess it would be the Respondent here, either way, that a party who seeks class arbitration is denied class arbitration. Can they appeal directly to us? Pincus If the case is in the same posture as this one, where the district court dismissed the action, then the provision that we rely on, Section 16a3, would provide for an appeal. Sotomayor So what's good for the goose is good for the gander. Pincus Absolutely, Your Honor. And that's Sotomayor All right. So we're going to be filled with all of these interim orders denying or granting class arbitration, as the case may be, because each losing party will have the opportunity to come to us, and the arbitration won't proceed. Pincus Well, it's not just class arbitration. Today, in the lower courts, when a lower court dismisses a case and grants in favor of an order granting arbitration, those cases are immediately appealable in courts like the Ninth Circuit. And there are many, many appeals pending right now in the Ninth Circuit on that basis. Sotomayor The courts aren't staying those cases? Pincus Excuse me? Some courts stay them and some courts don't, Your Honor. Breyer Why? I mean, throughout, again, throughout law, there's always a fight between making interlocutory matters immediately appealable, which, if you do, will often save a lot of money, and waiting till the end. And the normal decision here is wait till the end. And then there are exceptions, mandamus and certifunga question. But when we read the statute, it says what the district court shall do if he is satisfied that this is arbitrable, shall, on application of one of the parties, stay the trial of the action until the arbitration has been had. This judge didn't do it, and you didn't, your predecessor, didn't ask him to do it. So this seems like a fluke. But if we were to say these are appealable, it's not only contrary to very basic principle of how to run courts, but it's also, because of that, going to have just the effect Justice Sotomayor said. Pincus Well, a couple of answers, Your Honor. This case is in the exact same posture as Randolph, where the court made the initial decision that 16A.3, coupled with a dismissal, provides for an immediate appeal. The court in Randolph noted that there was a question about the question that Your Honor raises, whether it's proper for a district court to issue a stay or to dismiss the case, and said that that wasn't briefed, it wasn't a question before the court wasn't going to decide it. This case is in the same posture. It may be that the court should take a case to decide the question whether district courts have the power to dismiss rather than stay. But the issue is not presented here and hasn't been briefed here. Kagan May I ask, Mr. Pincus, if you could go back to the substantive argument? So in a strange kind of way, it occurred to me as Mr. Geiser was speaking, your position is very similar to Mr. Geiser's. You both have these very broad – this very broad contractual language, right? He had a broad delegation clause, and you have contractual language that refers to all disputes, claims, or controversies in lieu of any and all suits or other civil legal proceedings. And what I hear you to be saying is essentially that you want to say except for class suits. Is that right? Pincus I don't think so, Your Honor. I think what this case brings before the Court, as I said, is the question that Stolt-Nielsen didn't address. What Stolt-Nielsen said was silence isn't enough. Kagan Well, I'm just thinking as a matter first of just contract law. Because he said what we have here is we can't really believe that the parties agreed to include a certain set of things. And I hear you to be saying the same thing. We can't really believe that the parties agreed to be speaking of class claims. Pincus I think the contractual language here is actually quite clear. The language you quote, that Your Honor quoted, is language about what can't be done. There's a provision, and it appears on pages 24a to 25a of the Petition Appendix, that's captured, that's headed, claims covered by the arbitration provision. And it says the company and I mutually consent to the resolution of all claims or controversies past, present, or future that I may have against the company or against its officers, and I'll skip some language, blah, blah, blah, or that the company may have against me. Specifically, the company and I mutually consent to the resolution by arbitration of all claims that may hereafter arise in connection with my employment or any of the party's rights or obligations arising under this agreement. So we think the agreement is actually quite clear. And this isn't a case where we're asking of I mean, there's language that's in favor of each side's position. The all disputes, claims, or controversies, all suits, or other legal proceedings goes against you. You would suggest that I, me, and my cuts for you. You know, I'm not quite sure that that's the case, but, you know, because it's an agreement between these two parties about suits, and the question is what kind of suits is it about, and whether there's a kind of implicit exception for class claims in suits. I don't think it's about an implicit exception, Your Honor. In Stolt-Nielsen, the Court said we can't presume from an arbitration, the fact of an arbitration agreement, that the parties have agreed to class arbitration because of the fundamental difference. Yes, but in Stolt-Nielsen, there was no contract. There was no agreement. And, you know, everybody understood there was a stipulation to the effect that there was no agreement on this issue, and instead there was just a policy determination. But here there is a contract, and the question is what does the contract mean? Does it mean all disputes, claims, or controversies? Or does it mean all disputes, claims, or controversies, except class disputes, claims, or controversies, because we really think that the party would not, that the party who drafted the contract would not have agreed to that? Well, I guess there are a couple of questions embodied in your question, I think. I think Stolt-Nielsen, there was an agreement. The parties agreed that the agreement didn't speak to the question of class arbitration. We think this agreement, too, doesn't speak to the question of class arbitration. But we would never say that in general. A general clause usually speaks to the things inside it. If I say all furniture, it usually means tables and chairs. If I say all clothing, it usually means pants and shirts. And we don't insist that everybody lay out all the subcategories of things. So this question is, here you have an overall, you know, term, disputes, claims, or controversies. Why wouldn't you include class disputes, claims, or controversies, unless there's some kind of special contractual interpretive rule coming in that we wouldn't apply in other contexts? Well, we think Stolt-Nielsen said that there is a special contractual rule, and that there are two possibilities there. We think the most sensible rule is to apply the clear and unmistakable standard because of the fundamental change that arises from class arbitration to — from bilateral arbitration to class arbitration. One of the — Sotomayor, creating a Federal common law, something we're loathe to do in virtually every other context? Well, Justice — I think we were very clear that it's a matter of contract, and State law controls that. I think the Court has not been clear, Your Honor. Again, First Options specifically says that although contractual interpretation is generally a question of State law, in this context, the Court created, based on the FAA, a special interpretive rule that says — That's really interesting. Where does the FAA give us that right? The Court, many years ago in Moses Cone, said there was another contractual rule which says that close questions about arbitrability should go to arbitrability because of the policy embodied in the FAA. Look, I want you to finish that. Are you finished? Well, I was just going to respond to Justice Sotomayor's question about where that comes from in the FAA, and I think it comes from Section 4 of the FAA, what the Court has said and what the Court said both in First Options and in Stolt-Nielsen, where the Court made this exact same point about the general rule being Federal — being State law, but there being an FAA overlay, is that it comes from the requirement in Section 4 that the parties be directed to proceed to arbitration in accordance with the terms of the agreement, and I think in both contexts what the Court has said is that this is to be sure that it is the terms of the agreement in this special case. In the case addressed by First Options, the gateway issues, the concern is this is a question of the certainty that the parties are delegating that power to the arbitrator. Here, again, delegation of extraordinarily broad power to the arbitrator, as this Court has discussed in a number of opinions about class arbitration, therefore, we think the same test should apply. Sotomayor, I'm sorry. Is your position that the decision below was right on State law? Basically, you're not quarreling that this contract was ambiguous, that it was susceptible to the meaning Petitioner, that Respondent gave it, and that under California law that would encompass this claim because they weren't the drafters? Is your position now that Federal common law is superseding State law? Well, I think our position on how to interpret a contract. I think our position has consistently been that our principal argument is that there is a Federal rule that Stoltz and Nielsen identified. I'll ask you a different question. And our position on California law is we think that the lower court did wrongly apply California law and applied it in a way to reach a result. And we point to the two California court of appeals decisions, court of appeals decisions. Okay. But if I got you right, you said your principal position is that there's a Federal rule that would come in even if the California courts got California law right and that in many cases analogous to this, you would have read this contract to include both class claims and individual claims. It's really a Federal rule that you're asking for. We are advocating a Federal rule. I would say that court looks at the cases that cited in our petition. There's no court applying, looking at the issue de novo rather than an arbitrator's decision that has construed language like this to encompass class arbitration. Kagan. Right. You know, I guess I gave you a bunch of reasons why in looking at a normal contract under normal contractual principles, you might think that all this extremely general language included everything inside it. But you're saying, no, even if you think that, there's a Federal law that comes into play. Just to your Honor, as in the case of the question of whether a contract delegates arbitrability to the arbitrator, if the relevant State law would construe the clause to delegate, to construe the contract to make that delegation, what first option says is no, that's not enough. We have to have clear and unmistakable argument. I'm just trying to get a handle on what you're saying. So you're saying it's a Federal rule. So I guess my question is, where does the Federal rule come from? I think it comes from exactly the same place as the first options rule and from the discussion of this very issue in Stolt-Nielsen. It's instructive to look at Stolt-Nielsen. I understand, Your Honor, that Stolt-Nielsen didn't decide the content of the standard. But Stolt-Nielsen talked about the fact that interpretation of an arbitration agreement is generally a matter of State law and went on to talk about the fact that the critical question in the FAA is that contracts be interpreted according to their terms, pointing to the language in Section 4. And it concluded, it said, from these principles, it follows, that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding the party agreed to do so. It didn't do that. Kagan. So Stolt-Nielsen said, but Stolt-Nielsen was a case where they're clearly, where the Court specifically said there was no intent to the parties, there was no agreement as to the particular issue in front of it. So in my hypothetical, where the Court is saying, well, under State law, we would interpret this to understand that there was an intent to the parties and that there was an agreement as to this question, you're saying, notwithstanding that Stolt-Nielsen said that we didn't decide that question, that a Federal rule comes into play. And I guess I'm going to ask the same question, because I don't think it comes from Stolt-Nielsen where there was no agreement at all. So where does the Federal rule come from? I think it comes from the same place that the Moses Cone presumption comes from and the first options presumption, the rule of clear and unmistakability comes from, and the Howsam rule of clear and unmistakable requirement comes from, which is Section 4. What the Court has said is with respect to some critical questions, it wants to – there is a Federal rule of decision that comes from Section 4 to make certain that the authority delegated to the arbitrator has, in fact, been delegated. Kagan. I thought – go ahead. Please. And you're saying if – even if it's a questionable interpretation of that statutory language, again, similar to the last case with Justice Kagan's question, the precedent – the ship has sailed. Well, I think the ship has certainly sailed. In Stolt-Nielsen. At least you're saying the ship's a long way – a long way off. I think – Because the Stolt-Nielsen said that you needed something on the order of – express language or indicate it or hint it, is at least what you're saying here. I think it's impossible to read the discussions, Stolt-Nielsen, on pages 681 to 685 and conclude anything other than the fact that the Court concluded there that there was a Federal rule of interpretation that it didn't have to flesh. It said at footnote 10, in fact, we don't have to decide what that standard is, because – Because the only Federal rule was that it needed to be based on an agreement of the parties. Because it said arbitration is a matter of consent, and that's all over the Arbitration Act. But the question of how to understand whether parties have consented, that's usually a question of State law. And you're saying a Federal rule should come in and say, notwithstanding State law saying that these two parties have agreed to something, the Federal rule under the Arbitration Act says no. And usually what the Federal Arbitration Act does is it surely does come into play when you're afraid that the State law is discriminating against arbitration agreements. But where there is no such concern, and I don't think that there is such a concern if the State – if the State courts just say we're going to treat general language as including everything inside it, then I don't see where the Federal law comes into play to create a different contract interpretive rule. Well, First Options and Howsam were not concerned with discrimination. They were concerned with being certain that when significant power is being assigned to the arbitrator, that there be clear and unmistakable indication that that was the party's intent. Ginsburg. How can that be clear and unmistakable? Ginsburg. Let's take Conception, where the concern was that these arbitration agreements supposedly based on consent were adhesion contracts. And Conception said, and the Court – the Court said that the States remain free to take steps addressing concerns attending adhesion contracts. One such step would be to require that the class action waiver provision in adhesion agreements be highlighted. Well, here we don't even have a waiver provision. So Conception suggests waiver should be highlighted so the party subjected to it will understand that. And here you're asking us to declare clear and certain, a provision that doesn't say class – we waive class actions. Well, this might be a different case if the question were whether class actions are excluded from the agreement. My friends haven't argued that. The question here is whether this extraordinary procedure called class arbitration is going to be authorized. And so I think there the question where we're talking about whether to delegate that power to the arbitrator does raise exactly the same concerns that motivated the Court in these other contexts. Breyer. Can I go back for a second to the procedural problem? You're a plaintiff and you bring a case and you say, judge, I want you to send this to arbitration, right? And the other side says, no, judge, we want you to decide the issue. That's a normal case. And many, many cases like that will have difficult issues, like the one before us. And so section 3 of the arbitration agreement seems to say what the judge is supposed to do. Judge, if you think, stay the trial, send it to arbitration. If you think that's the result. By the way, judge, if you think there's a tough issue in this case, you can always certify it. And if one of the parties thinks there's a tough issue and you won't certify it, they can always ask for mandamus. That's like a million cases, and this is one of them. So if the judge makes a mistake and writes the word dismissal, or if the judge writes dismiss, or if one of the parties would really like to appeal, even though the judge has no reason for it, they can say, judge, write dismiss, and then he writes dismiss, and then suddenly it becomes appealable? I mean, you say, well, that's never been decided. I'd say, all right, but that's a threshold issue. Maybe then we should dig the case. Well, the Court did decide the issue in Randolph. And Randolph was in the same posture here, where there was an order on arbitration. Breyer. But it wasn't fully argued, and I just don't see why we should treat this area of the law when here, unlike the other areas, there is Section 3. Why should we treat it differently and suddenly reach a tough issue when the statute seems to say don't? Well, a couple of answers. I think it's important for the Court to reach the issue here, because the reality is, if a case is sent to class arbitration, it almost certainly is going to settle. The Court has talked a lot about the coercive, the inexorable pressure to settle in courts in class litigation. Class litigation in arbitration is 100 times worse, because the very limited standard of review at the other end. So the reality is, if all cases were stayed and the case could never be appealed at this stage, the question of what the standard is for deciding whether a contract authorizing class arbitration is would never be decided. There is a conflict right now in the courts of appeals about whether dismissal is a permissible step after a court has ordered arbitration or whether a stay is only permissible. The Court could certainly grant one of those petitions and decide it. The irony of that is that if that were the case, that the district court has no authority to dismiss, must simply stay the case in court. Would you agree that that is not a final judgment, there is no appeal? Well, the Court addressed this question in Randolph, which, as I say, was in this posture, and said that the fact that the question whether the district court had the power to dismiss, A, was not before it and did not preclude it from hearing the case. I think if this Court were to hold that a stay was the only permissible option, then obviously there wouldn't be an appeal. But as I say, there are many, many cases in which dismissals are ordered and in which there are appeals. And the irony of this case, frankly, is the shoes are on the other foot. Typically what happens is arbitration is ordered, especially in the Ninth Circuit. Plaintiffs seek dismissal so they can immediately appeal the arbitration order, and in the Ninth Circuit that's permissible, and typically defendants resist that. So that's just an issue that is going on. Sotomayor, in how many of those cases is, in this case, the Respondents did not ask for a stay, correct? True. And so the statute seems permissive. It says if a party asks for a stay, but there wasn't a request for one, correct? I believe that's right. And in those Ninth Circuit cases, even if there's a request for a stay, they go? Yes. The Ninth Circuit takes the position that the district court has the option of whether or not to dismiss or stay. So it then gives the district court the power to decide what's appealable or not? Yes. If you just had the statute and not Stolt-Nielsen or the other precedents you've cited, in response to Justice Kagan's question, how would you answer where does it come from? I would still say that it comes from the language of the statute that says, in accordance shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement, and that some issues confer, some decisions confer such power on the arbitrator that Federal law, before Federal law confers that power on the arbitrator, Federal law wants to be very sure that the parties have intended that result. Mr. Pincus, could one read that same language as suggesting not that the district court gets the opportunity to decide the nature of the arbitration, but merely whether there's an agreement to arbitrate, and that procedures like class or individualized proceedings are not within the scope of what section 4 contemplates, and that the error here is really that the district court shouldn't have gotten in the business of specifying the procedures that would be followed in arbitration? Well, many arbitration agreements expressly allocate the authority to decide this is it such an important question? Well, I understand that. This case, that would then come within the context of the statutory language. Is there an agreement to arbitrate? But that's not the language we have here. No, but the parties submitted the question to the district court. I think they essentially agreed that it was appropriate for the district court to decide it. One quick one, Mr. Pincus. You say in your brief that you do not necessarily argue for a clear statement rule. You agree that you didn't make that argument below. So what language, short of a clear statement, would lead you to conclude that this agreement was intended to authorize class arbitration? That it was not intended to authorize class arbitration. No, I mean, what would be enough for you to switch your position, essentially? Like, if this – if this – if you say a clear statement rule isn't required, but, you know, what kind of language would say, ah, I concede that the parties agreed to class arbitration there? If there wasn't the provision that I read and the agreement simply said, we agree that we can bring any lawsuits that we could bring against one another in court, but that's very different language than there is here, which talks about claims, which talks about my claims, and the only place that lawsuits is talked about is the in-lieu section, which is basically saying what you can't do. I'd like to reserve the balance of my time. Roberts Thank you, counsel. Ms. Verkosky. Verkosky Yes, Mr. Chief Justice, and may it please the Court. In this case, were the court within the appellate jurisdiction and thus properly before this Court, this Court should rule that the FAA does not preempt the application of neutral State contract principles to determine whether an arbitration agreement permits arbitration here? Roberts Well, the question really is whether they are neutral principles. As I understand it, the argument is that applying these principles has a peculiar impact on arbitration agreements, since it authorizes a type of arbitration that is like a poison pill that basically said in prior cases is fundamentally inconsistent with arbitration. Verkosky Right. But they have said in espousing the policy rule that the default might be bilateral arbitration, but what gives precedence to that is, first and foremost, we have to construe the contract and give intent to the parties, and that is consistent with the FAA. And a class arbitration, as to whether or not that applies in a class arbitration agreement, is not the same as an issue of arbitrability and doesn't rise to a special standard. So what's left is just the application of contract principles to determine the parties' intent as to what they applied with class arbitration. Ginsburg Nowadays, many arbitration contracts, many adhesion contracts, do put in explicit class action waivers. So if, let's say you're right, we're not doing very much, are we, because contracts will specifically say that class action is waived? Verkosky If that is the case, Your Honor, and it is clear and explicit that there is a class action waiver, then, yes, the parties' intent has to rule out under contract rules. Ginsburg So if, as I suggested before, if we say that, then all the parties who want to arbitrate bilaterally will simply put in their contract, class action is waived, and the party to that adhesion contract can't do anything about that? Verkosky They can't do anything about that if that's clear and unmistakable. And so we have to give intent to the parties. And at the same token, if the parties did agree to proceed with class arbitration, that, too, under the FAA, would be required to enforce the parties' intent. Ginsburg So here, the concern is lawyers that are less than the best and didn't put in a class action waiver, those contracts, in those cases, class arbitration would be permitted? Verkosky Well, it depends on the language of the actual agreement. And to the extent that the terms speak to class arbitration, even if it's not explicit, we have to determine the difference between whether it's silent and whether there is something there that supports a class arbitration, whether or not it's explicit with the words class arbitration. And in order to do that, the norm under the FAA is that we employ neutral contract interpretation principles like we would to all contracts to determine what the party's intent was with respect to class arbitration. Roberts' Well, but, I mean, it's, I guess, Justice Jackson's phrase. I mean, the FAA is not a suicide pact. So if the FAA says enforce the contracts according to its terms, but one of the terms is, as our prior precedents say, is fundamentally inconsistent with arbitration itself, then presumably the FAA would preclude that term. Verkosky Yes, that would be an exception to the normal rule, because that is elevated and the FAA had determined that first and foremost that the policy overrides that we want to enforce arbitration agreements. To the extent they are ambiguous, unlike the normal rule, when interpreting ancillary issues with respect to that agreement, when it comes to arbitration, issues of arbitrability, the default rule is they are construed in favor of arbitration, and that's consistent with the FAA's doctrine. Breyer The FAA has rules that govern class arbitration, don't they? Verkosky They do, but it's not Federal common rule that supplants the rule. Breyer No, no, I'm just saying this is an arbitration association, and the arbitration association has rules governing class arbitration, so they must not see class arbitration as a poison pill. They must think that class arbitration has a place, at least in some cases. Verkosky Correct, to the extent that the parties did agree to do so, and that agreement has to be enforced. Roberts I thought those same rules specify that the rules themselves do not provide a basis for assuming there is class arbitration. Verkosky There is no assumption one way or the other. What happens is that the courts have to construe, based on State contract law principles, to determine what the objective intent was of the parties at the time of enforcing the agreement. And the plain terms are given the terms of the contract are given their plain and ordinary meaning, and that is the first step. Roberts Counsel, if this is enough, this contract under ordinary and plain State law principles, where it's often in the text speaks of my claims, me and I, if that's enough, what do we do with the due process problem that Justice Alito pointed out in Oxford Health, where you would have potentially class members purportedly bound by an arbitration? This isn't a court of law where we can adjudicate absent class members' rights consistent with the Fourteenth Amendment because of the procedural protections associated with court proceedings. What do we do about those absent class members in opt-out classes permitted by whatever arbitrable forms, rules prevail? Verkosky Well, first of all, the policy issues with respect to due process are outside of the question presented. But even if this Court were to consider those, this is an antecedent question. Roberts Counsel, should we ignore them in considering the impact here of the Arbitration Act and normal contract principles and whether normal contract principles would abide due process, for example? Verkosky To the extent that due process concerns come into play, that's at a much later stage of the game. What is at issue here is we simply have a court's opinion. Ginsburg And there would be notice to all the class members. Would that have to be done in the arbitration, notice, give notice to everyone who is within the class? Verkosky Right. So at first, with our agreement here, the court, the district court just found that the agreement provides for a class arbitration and goes to the arbitrator to determine whether or not that will ultimately be certified. So the antecedent question of the court finding that the agreement here provides language that encompasses and anticipates and allows the parties to go forward with arbitration, which will now go to the arbitrator to decide, and they are subject to the same exact rules as a court of law when determining whether or not they are going to certify that class. Alito But do you think that absent class members who didn't agree to arbitration could be bound by the decision of the arbitrator? Verkosky Yes, they can. Alito How? Verkosky Because if they do decide to certify the class, they could employ the same due process protections such as opt-out procedures, and at that point an absent class member will have the opportunity to opt out, or they could limit it to an opt-in proceeding. And at the end of the day, when the arbitrator does make that decision, there is a review process. Alito If they have a legal claim, how can they be deprived of their legal claim pursuant to an arbitration award if they never agreed to arbitration? I thought arbitration was a matter of contract. Verkosky Well, in the first instance, it's a matter of contract, right, as to whether or not the contract actually will permit the proceedings. Now, the arbitrator might get that issue and decide it doesn't meet the threshold. There is no way to certify the class. So then we're back to individual arbitration. So that's why this is a very premature question, and due process concerns are not related to the antecedent question as to whether or not construing this particular arbitration agreement by the court, all she's saying is not ultimately that it is certifiable. She's just saying that it is the contract does support that the issue of whether or not the class can be certified goes to the arbitrator for ultimate decision. So the due process concerns are not involved in the first instance in just a strict contract interpretation. There are no decisions made on absent class members or who they will be. That's the issue that's resolved later on down the road, and it's the same issues that apply in a court of law that would apply in an arbitration, the same exact protections. And then they have the built-in review process where there's a partial final decision made by the arbitrator that can be appealable by either side, depending on the outcome. Scalia, under an extraordinarily deferential standard of review. For the arbitrator, yes, for their decision on class arbitration. But like in this case, the order in the first instance by the district court finding that the actual agreement did contemplate class proceedings to be given to an arbitrator to decide whether or not class certification is appropriate, those two orders would be combined, and the deferential standard would apply. Sotomayor, so why did you let the court decide that issue? We wanted the court to decide the issue because in the beginning we were also questioning the issue of arbitrability as to whether or not the data breach claims that we were alleging even fell within the scope of the arbitration agreement. And the issue of arbitrability was decided below. Sotomayor, I'm not quite sure why you did what you did, but it seems to me that that would have been clearly for the arbitrators under the terms of this contract, as it's related to. The arbitration, yes, the Ruminant issue definitely did have a delegation clause that gave the ability for the arbitrator to decide these decisions. When it was filed in district court on behalf of Frank Varela, the issues of it wasn't just a class issue involved. Sotomayor, class action is a procedural process. Correct. And in my mind, that quintessentially is always an arbitrator's question. What – when you hold the hearings, how you hold them, where, all of those things are typically arbitrator decisions. So it seems to me that under normal circumstances, you wouldn't have a court decide. That's, I think, Justice Gorsuch's earlier point. But here, instead, you chose the court to make that decision. Right. Both parties did. Nobody objected. And what is the context of that, then? So the court says that I order class arbitration. Is the arbitrator bound by that? If the arbitrator finds that the rules are not met in – under the FAA rules that are required for class actions, can – is he – is he forbidden from proceeding with individualized proceedings, nonetheless? Does he – is he forbidden from engaging in the normal kind of inquiry as to whether a class would be superior or preferable in some way that I assume the FAA rules have some – some analog to? They do. So the rules incorporated within – So is the arbitrator forbidden from making those inquiries by this ruling? The way that the JAMS and the AAA class arbitration issues are drafted, they say that whether a court decided the threshold issue as to whether the contract provided a basis to permit the class – to permit the parties to go on a class arbitration basis, that doesn't stop the inquiry. So it appears from the rules that the arbitrator has to give deference to that initial threshold ruling, but that doesn't mean that they have to ultimately certify the class. If it doesn't mean that – So why are we bothering with it, then? I mean, if at the end of the day we're going to have this large dispute in district court over whether the contract permits this or that procedure, I mean, we're going to have disputes over whether it permits discovery, and that's a contract issue that the parties negotiated, other kinds of procedures that might be allowed or disallowed in a – in an arbitration proceeding. It seems like a lot of collateral expense and difficulty that seems kind of a little inconsistent with the idea of getting to arbitration quickly and that the district court proceedings are supposed to be summary. Help me out with that. Right. If you're expanding it to issues beyond class arbitration and including them – Whether you expand it beyond the question of what – thumbs up or down on arbitration. Right. And what – To what kind of procedures that arbitration might address. Right. That can go to a court if the – if the parties submit it to that. And I don't think it's a long, extensive proceeding. It's done on a – Well, here we are. I know. Well, we – because we shouldn't have been here, there should have been no appeal. There was absolutely no right to appeal. It should have went right to the arbitrator. But wait a minute. Why did you not ask for a stay? We did not ask for a stay at the time because we were ready to go and for expediency and to get the benefits. So we were fine proceeding on a class basis, and we were ready to go to arbitration. Lambs Plus fought that and issued a stay because they didn't agree with the way – they didn't get the – what they wanted in asking for the order to compel arbitration. They got – they got their order compelling it, but they didn't like that it wasn't limited to an individual basis. Suppose you – suppose the district court dismissed your court claims and then ordered bilateral arbitration. Would you have an appeal? I would not. It would be interlocutory, and it would be barred by FAA Section 16. You would be stuck with whatever the – if the court said bilateral, you have no appeal. If it is class action, the other side, you say also has no appeal? On that particular issue alone, in that order isolated, looking at the order to compel arbitration, yes, I wouldn't have a basis. But if it was ordered in conjunction with an order dismissing my claims on a – on or without prejudice, then that would be a final ruling against me that would be a grievance to my – to my client. Under Randolph. Under Randolph. I would fit with under Randolph, and I would have a basis because that motion to dismiss would be final and allow me to appeal under 16A3, under the FAA, and the basis for that would be the incorrect ruling on the district court ordering me to compel arbitration. So I would have a basis for that. Unlike Lamps Plus, they could not turn a non-appealable issue all the way into an appealable issue because they're the ones who asked the court to order the dismissal of my client's claims. Initially, they did it with prejudice below, and they got it without prejudice. And if that were a stay instead, like arguably the FAA requires under Section 3 that if you are ordering the claims to proceed to arbitration, it should – it should – actually, the language says it shall issue a stay instead of a dismissal without prejudice. But if we had the stay, it wouldn't be a final order. But if it were reversed and I had – I was challenging the order of compelling arbitration in conjunction with the final order dismissing my claims, I would be aggrieved because now I'm out of those claims. Alito, there's a contract between two businesses, and Business A drafts the contract. Business B accepts the contract. There's nothing in the contract about arbitration. But the State court – but it turns out that, A, which the party that drafted the contract doesn't want arbitration, B, the party that did not draft the contract does want arbitration. There's no arbitration clause in the contract. But the State court says contra preferentum, this goes to arbitration. That's State law. Would that be permitted? That the – that it would err on the side of not finding for arbitration because it would be construed against the drafter who was in proposing. It would err on the side of finding arbitration because the – it was drafted by the party that objects to arbitration. So in that case, there is a special rule under the FAA that instead of construing it against a drafter, the FAA trumps that situation where you have to construe it in favor of arbitrability. This is – this would be a decision in favor of arbitrability. Right. So what is the difference between that situation and the situation here? Well, the – there was a decision issuing a – In other words, if State law – if State law governs, that's the decision under State law in this hypothetical. There must be arbitration, even in the absence of any arbitration clause whatsoever. That's State law. So that would be – would that be consistent with the – allowed under the FAA? It would be. If not, doesn't that show that the FAA imposes some rules that super – that supersede State law? Right. If it's consistent with the way the State law came out and found in favor of arbitration, then it wouldn't be in conflict with the FAA. Here is the problem like that that I'm having. All that you have in the California law, all we have here is the contract says in lieu of any and all lawsuits, we're going to have arbitration, okay? And then it says claims will be arbitrated if there are claims that would have been available as a matter of law. Nothing other than that. In the contract that issued? In the contract that issued, I gather, and then on the basis of that, California, unlike most places, which insist on more than that to create ambiguity, say that's enough to create ambiguity, and therefore we have class arbitration. Now, what is my problem? I dissented in Stolt-Nielsen. I think I did. But I lost. If I did, I lost. And what the majority said was you cannot infer class authorization solely from the fact of the party's agreement to arbitrate. So on the merits, what they're saying is, hey, that's all you have here. And California says that's they have a special rule, unlike any other place, that's enough to create ambiguity and ambiguity against the drafter. Well, if that's enough to create ambiguity and ambiguity against the drafter, then we have what Stolt-Nielsen says you shouldn't have. Now, I could say we should overrule Stolt-Nielsen. I think I won't get too far. And so we have the case right there with the language. We have the California language in the contract. And we have a special rule, which is their right, I guess, that we find ambiguity there, though the textbooks say don't. Okay? So that's the main point on the merits as I see it. And I'm asking the question because I want to know your response. Well, first of all, in Stolt-Nielsen, they did not interpret the agreements language at all. They said that there was an agreement, a side agreement between the parties, and the arbitrators expressly stated that we have no agreement on class arbitration. So we're not even going to look at the contract. They gave it to the arbitrators, and the arbitrators found that class arbitration applied simply on policy basis. This is not the contract here. There absolutely are provisions that support. They're very broad, and they encompass class proceedings. Sotomayor, the problem I have is the following, because it's following up on Justice Alito's question, okay? There are at least two or three California lower courts and at least one court of appeals who have seen contracts almost identical to this and said, contrary to the lower court here, to the Ninth Circuit, that that language is not enough to have a foothold in the contract under California law. Because the words, the waiver of all lawsuits or other civil legal proceedings, you have to submit everything to arbitration, don't say anything about the nature, the procedural nature of that arbitration. That's been their reasoning. And they look at all of the I's and my claims of this contract and say, that shows just a bilateral intent. And so those courts, unlike the court here, is basically saying that the court below misapplied State law. Now, are we supposed to give deference to the State court on its interpretation of State law? Or are we supposed to check to make sure that they are, in fact, following State law? Well, that's not even an issue here, because if this contract doesn't speak at all, there's no foothold. Our contract absolutely does. The contracts that LAMPS plus cited is from two appellate courts in the State court, and their language was very limited and not even nearly as broad as our provisions. And we have to do that. Breyer, what's the best statement in the contract that supports you? In our contract, the very best one is arbitration shall be in lieu of any and all lawsuits or civil legal proceedings relating to my employment. That arbitration will be in lieu of a set of actions that includes class actions and allows for class actions. And the language, when contrasted with the language of the State appellate courts, they were limited specifically to the law. My problem with that is arbitration isn't law proceedings by definition. You did have some discovery rules here, but by nature, the discovery rules in arbitration or procedural issue are different than a lawsuit. So are notice requirements and interrogatories. Everything is different procedurally. Why are you thinking that class action proceedings are a special proceeding that you're entitled to bring somewhere else? I'm not thinking that it's special. I'm thinking that to the extent that the parties have it in their contract, we have to give their intent, first and foremost, the equal we have to enforce it under the FAA. That's their overarching principle, is that we look at the intent and we enforce the contracts according to their intent. So those two lower State contract interpretations, they didn't find ambiguity at all. The language there was much more limiting into the individual claims that were able to be brought by that individual only with respect to his employment against his employer and vice versa. Our phrases are far more sweeping, where Mr. Varela assented to waiver of any right I may have to file a lawsuit or a civil legal proceeding relating to my employment with the company. Relating to my employment, the data breach, but for his employment, the data breach wouldn't have occurred. To the extent he has claims out of the data breach, that encompasses claims of other workers that were subject to the same set of circumstances. Sotomayor, he's granted that right as a procedural right in the lawsuit. The operative question here is, is he entitled to that in an arbitration? That's a separate. He absolutely is, because the word ''proceeding'' is extremely broad, and it includes legal actions or procedures. A civil arbitration or a class action is absolutely a proceeding. And not only that, controversies, disputes, a class action is a controversy or a dispute, and anything that was supposed to be brought in a court of law that could have been brought now has to be brought in arbitration. And it doesn't say that those claims cannot be, or that they are waived from being brought in arbitration. And the fact that it's, you know, the LAMPS plus argues that there's bilateral language that I, me, my employment, that doesn't, it doesn't modify the term ''my individual employment'' or ''my individual claims.'' My employment encompasses all kinds of different claims that arise out of his employment, including the data breach. And because whatever Mr. Varela could bring in a court of law individually, he is entitled to also bring those claims on a class-wide basis in arbitration, because ''in lieu of'' means a set of actions that could have been brought in a court of law now have to be brought into arbitration. And that does not limit his right to bringing the proceedings on an aggregate basis. That doesn't change the nature of the claims or the parties' rights. The only thing it changes is the way that the proceedings are processed in arbitration. And it doesn't stop there. The language goes even broader to encompass all remedies that could have been issued in a court of law. Sotomayor, Class action is not a remedy. No, class action is not a remedy, but remedies can be awarded and are awarded through class actions. To other people, not him. To other people, but there's nothing that prohibits him from bringing in arbitration only his individual claims. When they said ''arising out of his employment'' it doesn't say his employment and that includes and only includes his individual claims relating to his employment. Counsel, the dissenting judge below said that the Ninth Circuit's decision was a palpable evasion of Stolt-Nielsen. And picking up on Justice Breyer's question who asked you how you would distinguish Stolt-Nielsen, you said, one, the court there did not interpret the agreement's language at all. Is there anything else you'd like to add to how you would distinguish Stolt-Nielsen? Absolutely. We are on all fours with Stolt-Nielsen, because what Stolt-Nielsen said expressly was what we need is a contractual basis in order to find that the parties intended to proceed on the class arbitration basis. And it doesn't say that it needs to say class arbitration expressly. So there we have a we have a situation versus silent and expressly, and what we're And if we look at Oxford Health, the arbitrator there was permitted to construe the arbitration agreement just by looking at the contract language. And although on review, they had to give him deference, they stated that they might not have agreed with his interpretation, but if we were going to go with the clear and unmistakable new policy that Lambs Plus wants this Court to adopt, then Stolt- Nielsen, I'm sorry, Oxford Health would have been completely erroneous. And that should have been overruled. Thank you, counsel. Four minutes, Mr. Pincus. Thank you, Mr. Chief Justice. Just a couple of points. Justice Breyer mentioned the AAA rules on class arbitration. There are a number of decisions, hundreds of decisions reported on the AAA website. There are only eight that are decisions that go to the merits. Five approved settlements. One is a dismissal. One is in favor of the defendant, and there's one for the plaintiff. So they really, for all the years that class arbitrations have been in process, they really haven't produced a lot at the end of the line. Justice Gorsuch raised the due process issue, and I think that's another reason why the clear and unmistakable standard makes sense. There's a serious risk that if the standard applied below were allowed to prevail, then the class arbitration would proceed. Let's say the defendant won. Then every class member would then argue in the future when the defendant sought to enforce that judgment, I didn't agree to class arbitration, so I'm not bound by that judgment. A clear and unmistakable, and certainly- I think there are serious questions that were pointed out by Justice Alito in his Oxford Health dissent about whether an arbitration to which they didn't consent could bind them, especially if they could prevail on an argument that the arbitration agreement did not provide for class arbitration. That would be their argument, and ironically, the defendant would then be arguing for class arbitration, the class- a putative class member would say no, and the putative class member would say you should construe the ambiguous agreement against me by saying there's no- there's no arbitration. So that's another reason why we think the clear and unmistakable standard makes sense. Justice Gorsuch, you asked about whether the arbitrator would be bound by the district court's decision. The arbitrator is bound under Rule 1C of the AAA rules by the decision that the court authorizes class arbitration. Obviously, the arbitrator then would have to go through the process to see whether the rules for certifying a class were met, but he couldn't or she couldn't contradict the court's determination that class arbitration was authorized. And then just my friend relies-places a lot of reliance on the in lieu of sentence in the agreement, but what that says is what arbitration is instead of, it doesn't say what can be arbitrated. And what can be arbitrated is covered by the claims covered by the arbitration provision, and that's the provision that has the ayes and the mayes, unless the court has any further questions. Thank you, counsel. The case is submitted.